### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                              :
TASHIA NANETTE COGDELL        :
                              :
v.                            : Civ. No. 3:14CV1334 (HBF)
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :
                              :
-----------------------------x
```

### RULING ON CROSS MOTIONS[1]

Plaintiff Tashia N. Cogdell brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §423(a)(1)(E) and §1382(a)(1). Plaintiff has moved to reverse and remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #25]** is

---

[1] A recommended ruling was filed on March 8, 2017 [Doc. #33]. The Court entered an order vacating the recommended ruling on March 28, 2017, [doc. #38] in light of the parties' consent to proceed before a United States Magistrate Judge [doc. #23] with appeal to the Court of Appeals.  Fed. R. Civ. P. 73(b)-(c).

**DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #31]** is **GRANTED**.

## I.  ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff filed an application for DIB and SSI on March 26, 2010, alleging disability as of May 1, 2003.[2] [Certified Transcript of the Record, Compiled on May 2, 2015, Doc. #15 (hereinafter "Tr.") 18, 181]. Plaintiff's claims were denied initially and on reconsideration. [Tr. 181].

On October 25, 2011, plaintiff, represented by counsel, appeared before Administrative Law Judge ("ALJ") Deirdre Horton for an administrative hearing. [Tr. 36-68]. A second hearing was held before ALJ Horton on November 2, 2012, after remand from the Appeals Council. [Tr. 195-98; 69-114]. Vocational Expert ("VE") Kathleen Regan, testified by telephone at the hearing. [Tr. 102-113]. On December 14, 2012, ALJ Horton found that plaintiff was not disabled, and denied her claim. [Tr. 15-33]. Plaintiff's January 17, 2013, request for review of the hearing decision was denied on July 22, 2014. [Tr. 1-7; 8-9]. The case is now ripe for review under 42 U.S.C. §405(g).

---

[2] Plaintiff's date last insured was December 31, 2012. [Tr. 20]. To qualify for DIB under Title II, plaintiff must be found disabled on or before March 31, 2004. [Tr. 20]. Plaintiff can be awarded SSI if she was disabled at the time of her application for SSI benefits March 26, 2010, and remained disabled for a year after.

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse the Commissioner's decision.

## II.   STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

3

evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that, in reviewing the ALJ's

4

decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1). To qualify for supplemental security income, an individual must be eligible on the basis of income and resources. 42 U.S.C. §1381a.

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A).

Such impairment or impairments must be "of such severity that
[s]he is not only unable to do h[er] previous work but cannot,
considering h[er] age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the
national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R.
§404.1520(c)(alterations added) (requiring that the impairment
"significantly limit[] ... physical or mental ability to do
basic work activities" to be considered "severe"); 42 U.S.C.
§1382c(a)(3)(B), 20 C.F.R. §416.920(c).

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

6

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."

7

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

**IV.   THE ALJ'S DECISION**

Following the above-described five step evaluation process, ALJ Horton concluded that plaintiff was not disabled under the Social Security Act. [Tr. 18-28]. At step one, the ALJ found that plaintiff had engaged in substantial gainful activity between October 2009 through June 2010. [Tr. 21]. The ALJ found that there has been a continuous twelve month period(s) during which plaintiff did not engage in substantial gainful activity. Id. Her findings address the period(s) plaintiff did not engage in substantial gainful activity. Id.

At step two, the ALJ found that plaintiff had the severe medical impairments of degenerative disc disease of the lumbar spine and bipolar disorder. Id.

At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 416.920(d)), specifically listings 1.04 (musculoskeletal for disorders of the spine) and 12.04 (depressive disorder). Id. The

8

ALJ also conducted a psychiatric review technique and found that plaintiff had mild limitations in her activities of daily living, and moderate limitations in social functioning, concentration, persistence and pace, and no episodes of extended duration decompensation. [Tr. 21-22].

Before moving on to step four, the ALJ found that plaintiff had the RFC to perform

> light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), and can sit, stand, and walk for 6 hours in an 8 hour day. She can lift and carry 25 pounds occasionally and 10 pounds occasionally and 10 pounds frequently. She is able to understand, remember, and carry out instructions; she would do better at working in her own or in small groups; she should avoid working with the public. She can maintain attention and focus to complete simple tasks; however, she would occasionally have difficulties maintaining focus for complex tasks.

[Tr. 22].

At step four, the ALJ found plaintiff was unable to perform her past relevant work as a nurse's aide. [Tr. 26]. At step five, considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 26-28].

## V.   DISCUSSION

On appeal, plaintiff asserts the following arguments in favor of remand.

1. The ALJ's step three finding was error;

9

2. The ALJ's application of the treating physician's rule was error;

3. The ALJ's credibility assessment was not supported by substantial evidence;

4. The ALJ did not properly evaluate the duration, persistence, location and severity of plaintiff's pain;

5. The ALJ's analysis of plaintiff's residual functional capacity was not supported by substantial evidence;

6. The ALJ's step five determination was not supported by substantial evidence.

**A.  Substantial Evidence Supports the ALJ's Step Three Findings**

The plaintiff challenges the ALJ's findings at Step Three, arguing that she meets Listings 1.04, and 12.04. As the defendant correctly asserts, the plaintiff bears the burden of proof at Step Three. <u>Talavera</u>, 697 F.3d at 151 ("The applicant bears the burden of proof [at this stage] of the sequential inquiry[.]"). At Step Three, an applicant is required to identify a particular listing under which she may qualify. "For a claimant to show that [her] impairment matches a listing, it must meet <u>all</u> of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in original).

**1.  Listing 1.04A**

Plaintiff contends that her impairments meet the

requirements of Listing 1.04A, which addresses disorders of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.

The medical evidence of record fails to support a finding of nerve root compression. For example, an MRI of plaintiff's lumbar spine dated June 15, 2006 revealed "[g]eneralized disc protrusion at L5-S1 with a small disc extrusion extending posterior to L5 vertebrae. This has improved significantly in appearance when compared to the examination of 6/15/05." [Tr. 581]. "[N]o significant mass effect upon the thecal sac or exit foramina" was noted. Id.; see also Tr. 583 (MRI dated 6/15/05). Plaintiff also does not cite to any such proof. Because there is no medical evidence of record that plaintiff suffers from nerve root compression, she cannot meet this Listing.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that plaintiff did not meet Listing

11

1.04A.

## 2.  Listing 12.04

Plaintiff also contends that her mental impairments meet

the requirements of Listing 12.04, which addresses affective

disorders:

> Affective disorders: Characterized by a disturbance of
> mood, accompanied by a full or partial manic or
> depressive syndrome. Mood refers to a prolonged emotion
> that colors the whole psychic life; it generally
> involves either depression or elation.
>
> The required level of severity for these disorders is
> met when the requirements in both A and B are satisfied,
> or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous
>    or intermittent of one of the following:
>
> ...
>
> <u>AND</u>
>
> B.  Resulting in at least two of the following:
>    1. Marked restriction in activities of daily living;
>       or
>    2. Marked difficulties in maintaining social
>       functioning; or
>    3. Marked difficulties in maintaining concentration,
>       persistence, or pace; or
>    4. Repeated episode of decompensation, each of
>       extended duration[.]

20 C.F.R. Pt. 404, Subpt. P App. 1, Listing 12.04 (emphasis

added). "A marked limitation may arise when several activities

or functions are impaired, or even when only one is impaired, as

long as the degree of limitation is such as to interfere

12

seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Id. at 12.00C (citing 20 C.F.R. §§404.1520a and 416.920a).

Plaintiff argues that she meets the section B requirements of Listing 12.04 because she allegedly suffered from marked impairments in her activities of daily living, social functioning, and ability to maintain concentration, persistence or pace. [Doc. #25-1 at 11-13]. The ALJ, by contrast, found that plaintiff was only mildly restricted in her activities of daily living and moderately restricted in social functioning, and ability to maintain concentration, persistence or pace, and that she suffered from no periods of extended duration decompensation. [Tr. 22]. The Court finds that substantial evidence supports the ALJ's conclusion.

Plaintiff contends that she is markedly impaired in activities of daily living. This argument is solely based on APRN Susan Denisco's Mental Impairment Questionnaire dated November 2, 2010 and Medical Source Statement dated August 16, 2011.[3] [Doc. #25-1 at 12; Tr. 495-99; 596-98]. However,

---

[3] A Medical Source Statement of Ability to do Work-Related Activities (Mental) was completed by APRN Susan Denisco on August 16, 2011. [Tr. 596-98]. APRN Denisco opined that plaintiff had a "moderate" impairment in her ability to understand and remember and carry out simple instructions, and understand and remember complex instructions and "marked" impairment in her ability to make judgments on simple work-related decisions, carry out complex instructions, and make

13

substantial evidence supports that ALJ's finding. Dr. Murphy
reported in 2010 that plaintiff was "neat[,] clean, and had
well-maintained and appropriate clothing" and the visiting nurse
reports from 2012 failed to note any difficulties in this area.
[Tr. 22; 483; 654-892]. APRN Denisco found in 2010 that
plaintiff had "a slight problem" with caring for her physical
needs. [Tr. 497]. Plaintiff reported in her May 7, 2010
Activities of Daily Living Questionnaire that she prepared her
own meals, shopped for food and completed most household chores,
worked Monday through Friday from 9:00 AM to 3:00 PM and
attended church three times a week. [Tr. 415-18]. Plaintiff
reported working 5-6 hours a day 6 days a week during the 2010
consultative examination with Dr. Murphy. [Tr. 482].
Furthermore, the state reviewing, non-examining psychologists
each opined that plaintiff was not restricted in this regard.
[Tr. 131; 143]. Simply, plaintiff's activities of daily living

---

judgments on complex work related decisions. [Tr. 596]. The
nurse stated "[t]his patient suffers from Bipolar Depression'
functions at a hypomanic level, poor judgment; hypo[],
impulsive. H/o chronic low back pain; sees orthopedist [and]
attends p.t." [Tr. 596]. APRN Denisco opined that plaintiff had
"marked" limitations to interact appropriately with the public,
supervisor(s), co-workers, and respond appropriately to unusual
work situations and to changes in a routine work setting. [Tr.
597]. "Pt is impulsive; has poor boundaries, defensive;
difficulty taking direction from authority." Id. The nurse
recommended a psychiatric evaluation which was conducted at
Southwest Community Health Center on January 26, 2012. [Tr. 597;
599-617].

were not impaired to a "marked" degree, as that term is defined
by the Listings.

Plaintiff also contends that she is markedly impaired in
social functioning. [Doc. #25-1 at 13]. However, as noted by the
ALJ, plaintiff does in fact leave the house to participate in
daily activities [Tr. 22], and plaintiff's own description of
her normal daily routine involves her leaving the house to
socialize, attend church and shop. See Tr. 417-18; 615
(reporting she could engage with others). Treatment records from
Family Care Visiting Nurse also state that plaintiff was not
home bound and that she left the house from 2-5 hours a day 3-7
days a week to socialize and/or shop. [Tr. 643-898].  Again, the
state reviewing, non-examining psychologists each opined that
plaintiff experienced only moderate difficulties in this regard.
[Tr. 131, 143]. As set forth above, Plaintiff reported working
5-6 hours a day 6 days a week during the 2010 consultative
examination with Dr. Murphy. [Tr. 482]. A SCHC psychosocial
evaluation dated January 26, 2012, found plaintiff oriented to
time, place, and person. [Tr. 604]. Her affect, thought
processes and content, attention, memory, insight, judgment, and
impulse control were normal or appropriate. [Tr. 604].
Accordingly, substantial evidence supports a finding that
plaintiff's social functioning was not impaired to a "marked"
degree, as that term is defined by the Listings.

15

Last, plaintiff argues that she is markedly impaired in memory, concentration, persistence and pace. [Doc. #25-1 at 12-13]. This argument, however, is not supported by the record. Plaintiff stated that she could follow written and spoken instructions "very well" and could pay attention for twenty to thirty minutes. [Tr. 419]. Plaintiff further reported she was able to pay bills, count change and handle a savings and checking account. [Tr. 417]. In a 2010 evaluation by the consultative examiner, Dr. Murphy, it was noted that plaintiff "was able to remember most details of her history and her memory appeared within normal limits;" "[t]here was no indication of delusions or paranoid thinking;" "thoughts were consistent with her mood;" and there was "no indication of psychosis." [Tr. 483]. Plaintiff scored in the normal range of cognitive functioning and the doctor found she had the "ability to carry out simple instructions." Id. Dr. Murphy concluded that "her cognitive weakness may improve over time when her emotional issues are treated. With proper psychological treatment, she may see some improvement in cognitive functioning." [Tr. 485-86]. In a January 26, 2012 Psychosocial Evaluation plaintiff indicated that she was able to read, write, retain information, engage others, define needs, seek treatment, express feelings, and has a supportive family. [Tr. 615]. Mental health treatment records from Family Care Visiting Nurse in 2012, consistently report

16

that plaintiff's mood was stable, with full range affect,
anxious, labile mood, neat appearance-sometimes disheveled,
clear and coherent thought process/speech, appropriate thought
content-sometimes noting poor insight and judgment, perception
was within normal limits and her behavior was cooperative-
sometimes noting that she was agitated, guarded or withdrawn.[4]
There was no indication of suicidal or homicidal ideation. [Tr.
643-898; see Tr. 632-42; 899-908; Treatment Records from
Southwest Community Health Center (Tr. 899 ("Client did not
report any significant psychiatric issues this week."); 904
(Mood and affect appropriate. "[S]table on her medications.");
906-8 (noted that mood and affect were appropriate)]. The state
reviewing non-examiners each also found plaintiff to suffer only
moderate difficulties in this area. [Tr. 131, 143]. Accordingly,

---

[4] The treatment records from Family Care Visiting Nurse range
from June 28 through November 2, 2012, offering assistance to
plaintiff with medication compliance including pouring
medications. [Tr. 643-898]. The initial psychosocial evaluation
on January 26, 2012, from Southwest Community Health Center
assigned a GAF score of 48. [Tr. 614]. "GAF rates overall
psychological functioning on a scale of 0-100 that takes into
account psychological, social, and occupational functioning."
Zabala v. Astrue, 595 F.3d 402, 406 n.1 (2d Cir. 2010)(citing
Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of
Mental Disorders 34 ("DSM-IV),(4th ed. 2000). "A GAF in the
range of 41 to 50 indicates '[s]erious symptoms (e.g., suicidal
ideation, severe obsessional rituals, frequent shoplifting) OR
any serious impairment in social, occupational, or school
functioning (e.g., no friends, unable to keep a job).'" Id. at
n.2 (quoting DSM-IV, at 34). Consultative Examiner Dr. Murphy
assigned a GAF score of 50 in June 2010. [Tr. 485].

substantial evidence supports a finding that plaintiff's concentration, persistence or pace were not impaired to a "marked" degree, as that term is defined by the Listings.

Finally, there is no evidence that plaintiff experienced episodes of decompensation.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 12.04.

**B.    The ALJ Correctly Applied the Treating Physician Rule**

Plaintiff next contends that the ALJ erred in his application of the treating physician rule.

Pursuant to 20 C.F.R. §404.1527(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §404.1527(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length

18

of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). If the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore, 566 F.3d at 307.

### 1.   Susan Denisco, DNP, APRN, FNP-BC

Plaintiff first argues that the ALJ erred by assigning "some weight" to the opinion of Family Nurse Practitioner Susan Denisco. With respect to these opinions, the ALJ stated:

> A medical source statement submitted by Susan Denisco, FNP-BC, dated November 2010, indicated that she had been treating the claimant since 2001. She noted a slight improvement. Ms. Denisco noted intermittent complaints of anxiety and depression, with no hospitalizations. The claimant was reported to have pressured speech, obsessive thoughts, and an expansive affect. Ms. Denisco opined that the claimant had manic behaviors which would prevent her from getting along well with others. She also noted poor coping skills and poor social skills (Exhibit 5F). The undersigned has given some weight to this opinion, despite being from a family nurse practitioner, and in doing so has provided the following limitations into the residual functional capacity: she would do better at working in her own or in small groups; she should avoid working with the public.
>
> In August 2011, Ms. Denisco completed another medical

source statement, indicating that the claimant was impulsive and hypomanic (Exhibit 13F). She noted that her treatment for depression began in June 2009. The undersigned has given some weight to Ms. Denisco's opinions, but does not find that the claimant has marked levels of functioning, given that she worked for over a year, in at least one demanding and stressful job. Moreover, it does not appear that the claimant's depression became an issue until 2010. An incomplete Social Services form in June 2012 noted the claimant's diagnoses as bipolar and back pain, but the rest of the form was not completed (Exhibit 16F).

[Tr. 25 (emphasis added)].

Social Security Ruling 06-03p clarifies how the Commissioner will consider opinions from sources that are not "acceptable medical sources." SSR 06-03p distinguishes between "acceptable medical sources" and "other sources" because (1) "acceptable medical sources" are necessary to provide evidence of medically determinable impairments; (2) only "acceptable medical sources" can give medical opinions; and (3) only "acceptable medical sources" can be treating sources whose medical opinions can be afforded controlling weight. SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).

An Advanced Practice Registered Nurse (APRN) does not fall within the category of "acceptable medical sources." See id. at *2. Nonetheless, all relevant evidence in the case record is required to be considered. Id. at *4; 20 C.F.R. §404.1527(b). The weight accorded the evidence varies based on the following factors: length and frequency of treatment relationship,

consistency with other evidence, degree to which relevant evidence is offered in support of an opinion, how well the source explains an opinion, whether the source has expertise related to the impairment, and other relevant information. SSR 06-03p, 2006 WL 2329939, at **4-5.

Here, Ms. Denisco offered no explanation for her opinions and cited no relevant evidence in support of it despite a treating relationship since 2001. [Tr. 25]. In determining that Ms. Denisco's opinion be afforded some weight, the ALJ expressly indicated that Ms. Denisco was not an acceptable medical source, assigning "some weight to [her] opinions, but [did] not find that the claimant [had] marked levels of functioning, given that she worked for over a year, in at least one demanding and stressful job." [Tr. 25]. "The ALJ's remarks were a proper application of SSR 06-03p in determining the weight given to other sources that are not acceptable medical sources." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 401 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013).

The Court also notes that there are no treatment records from Ms. Denisco to support her opinions and plaintiff cites to none. Nothing in the record indicates that Ms. Denisco had any expertise as to plaintiff's mental limitations. As set forth above, the record shows that plaintiff's mental health improved with consistent treatment and compliance with her medications.

[Tr. 643-898; see Tr. 632-42; 899-908; Treatment Records from Southwest Community Health Center (Tr. 899 ("Client did not report any significant psychiatric issues this week."); 904 (Mood and affect appropriate. "[S]table on her medications."); 907-8 (noted that mood and affect were appropriate)]. Accordingly, the Court finds that the ALJ's determination that Ms. Denisco's opinions be given some weight was well supported.

### 2.   Consultative Examiner Dr. Annmarie Murphy

With respect to consultative examiner Dr. Annmarie Infantino Murphy, plaintiff asserts that that the ALJ erred in assigning "significant weight" to the doctor's opinion.

"State agency medical and psychological consultants ... are highly qualified physicians who are experts in Social Security disability evaluation, 20 C.F.R. §404.1527(f), and, as the Second Circuit has held, the opinions of non-examining sources can override the treating sources opinions provided they are supported by evidence in the record." Mitchell v. Astrue, 3:10CV00902(CSH), 2011 WL 9557276, at *15 n.22 (D. Conn. May 24, 2011), report and recommendation adopted, 3:10CV00902(CSH), 2012 WL 6155797 (D. Conn. Dec. 11, 2012) (citing Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993)) (internal citation and quotation marks omitted).

Here, Dr. Murphy examined plaintiff on June 4, 2010 and administered a clinical interview, Slossan Test of Intelligence-

Revised, TONI-2, WAIS-IV Processing and Working Memory Subtests,
Selected Subtests of the Weschsler Memory Test,
Neuropsychological Symptoms Checklist, Mental Status Exam, Beck
Psychological Inventory, 15-Item Malingering Test, and Selected
Items of the Miller Test of Malingering. [Tr. 481-86]. The
evaluation included a detailed psychosocial and medical history
and historical evaluations provided by plaintiff. [Tr. 481-82].

> The ALJ accurately found that plaintiff
>
> reported that she was working 6 days a week for 5 hours
> a day as a CNA, and had cut back due to back pain . . .
> She was described as neat, clean, well-maintained and in
> appropriate clothing. Her memory appeared to be within
> normal limits. She had a mildly depressed mood but was
> animated. A mini mental exam was normal. Dr. Murphy
> performed cognitive tests, in which claimant scored a
> full scale IQ of 70-80, but Dr. Murphy qualified this
> finding of borderline intellectual functioning by saying
> that it was a tentative diagnosis of cognitive ability,
> as the test performed was not as comprehensive as the
> WAIS-IV. Moreover, Dr. Murphy indicated that the
> cognitive functioning could be improved by psychological
> treatment for emotional issues. Dr. Murphy recommended
> that the Bureau of Rehabilitative Service provide job
> coaching to maintain the claimant's current employment.
> The undersigned has given significant weight to Dr.
> Murphy's findings, which did not preclude unskilled
> work.

[Tr. 25, 482-86]. These findings are supported by Dr. Murphy's
observations and test findings and are not disputed. Instead,
plaintiff emphasizes other findings contained in Dr. Murphy's
report and contends that the "ALJ engaged in prohibited cherry-
picking" and selective consideration of the record. However, as
set forth above, the opinions expressed in Dr. Murphy's

psychological evaluation were consistent with the remainder of the record. [Tr. 643-898; see Tr. 632-42; 899-908; Treatment Records from Southwest Community Health Center (Tr. 899 ("Client did not report any significant psychiatric issues this week."); 904 (Mood and affect appropriate. "[S]table on her medications."); 906-8 (noted that mood and affect were appropriate)]. Here, the ALJ evaluated Dr. Murphy's evaluation and adequately articulated the facts relied on in assigning weight to the doctor's opinion. SSR 96-5P, 1996 WL 374183, at *5 (S.S.A. July 2, 1996) ("Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. §§404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.").  Moreover, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing Richardson v. Perales, 402 U.S. at 399).

Accordingly, the Court finds that the ALJ did not err in her application of the treating physician rule.

### C.    The ALJ Properly Determined the Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in her credibility determination. The ALJ is required to assess the credibility of the plaintiff's subjective complaints. See generally 20 C.F.R. §404.1529. The courts of the Second Circuit prescribe a two-step

24

process. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a medically determinable impairment that could reasonably produce the alleged symptoms. 20 C.F.R. §404.1529(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding the intensity of the symptoms. 20 C.F.R. §404.1529(c). To do this, the ALJ must determine if objective evidence alone supports the plaintiff's complaints; if not, the ALJ must consider other factors laid out at 20 C.F.R. §404.1529(c). See Skillman v. Astrue, No. 08CV6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010). These factors include: "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; and (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain." Id. (citations omitted). The ALJ must consider all the evidence in the case record. SSR 16-3P, 2016 WL 1119029, at *2 (S.S.A. March 16, 2016). Furthermore, the "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the how the adjudicator evaluated the individual's symptoms. Id. at *9. "Put another way, an ALJ must assess subjective evidence in

light of objective medical facts and diagnoses." <u>Williams</u>, 859

F.2d at 261.

After summarizing plaintiff's testimony, the ALJ made the

following statement regarding plaintiff's credibility:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected to
> cause the alleged symptoms; however the claimant's
> statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to
> the extent they are inconsistent with the above residual
> functional capacity assessment. (SSR 96-7P). The
> claimant started receiving visiting nursing services in
> June 2012. Despite her testimony, the records reveal
> that she was able to dress and bathe independently;
> toilet and ambulate. Her pain was described as mild, as
> a 3/10 and interfered less than often with her daily
> activities. She had no mobility limitations and was
> walking frequently. She left home for socializing and
> shopping, at least 5 days a week. At times she denied
> pain, and indicated that her mood was a 5/10. She was
> also traveling to Florida (Exhibit 19F; see pgs. 54, 62,
> 74, 76).
>
> Despite the claimant's allegations, the claimant has
> actually worked somewhat consistently since the alleged
> onset date of disability in 2003. Between 2007 and 2010,
> the claimant worked as a certified nursing assistan[t].
> She testified that she would go to patients' homes and
> straighten up the house, do dishes, and make sure
> patients got meals. The claimant testified that she had
> to help patients get in and out of chairs, and would
> have to help keep them from falling. Prior to doing in-
> home nursing care, the claimant worked in several
> nursing home facilities between 2003 and 2004.
> Additionally, the claimant also testified that between
> 2004 and 2007 the claimant was doing in-home day care.
> She testified that she cared for 5-6 children at a time.
> The undersigned notes that caring for upwards of six
> children is no easy task, and is certainly challenging,
> both mentally and physically. Overall, the claimant has
> shown an ability to work since the alleged onset date.

This work history is inconsistent with allegations of a disabling condition.

[Tr. 26; Tr. 45-50; 76-81; 397-412; 417-18; 550; 696-98; 710-12; 718; 659-982]. The ALJ conducted a detailed analysis of the objective and other medical evidence of record supporting this finding. [Tr. 22-26].

Plaintiff first takes issue with the ALJ's use of "boilerplate language," which she claims "conflicts with the agency's own regulations . . . ." [Doc. #25-1 at 19]. This argument, however, is without merit as the ALJ's credibility analysis was not <u>limited</u> to boilerplate language. Indeed, as noted above, she engaged in an extensive analysis of the record and found plaintiff not credible based on a number of different factors including: plaintiff's work history since her alleged onset disability date; visiting nurses treatment records since June 2012; gaps in treatment since the alleged onset date; and inconsistencies between her testimony and the medical evidence of record.[5] [Tr. 23-26]. Accordingly, the ALJ's use of boilerplate language does not constitute error, where she has

---

[5] The Court further recognizes that the ALJ had an opportunity to personally observe plaintiff at the hearing. <u>Cf.</u> <u>Suarez v. Colvin</u>, No. 14CV6505(AJP), 2015 WL 2088789, at *23 (S.D.N.Y. May 6, 2015) ("[C]ourts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying." (quoting <u>Marquez v. Colvin</u>, No. 12CV6819(PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013))).

adequately explained her credibility findings. See Halmers v. Colvin, No. 12CV00288(MPS), 2013 WL 5423688, at *7 (D. Conn. Sept. 26, 2013) ("[T]he use of boilerplate language is not an error [] 'if the ALJ has otherwise explained his conclusion adequately[.]'")(quoting Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012)).

Next, plaintiff contends that the ALJ did not properly consider her complaints of pain. The Court disagrees. A close review of the ALJ's decision reflects that she did in fact consider plaintiff's allegations of pain, their consistency or inconsistency with the objective medical evidence, gaps in treatment and how such complaints of pain generally did not result in functional limitations. See Tr. 23-26. Although "the subjective element of pain is an important factor to be considered in determining disability," Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). Indeed, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Snell, 177 F.3d 128, 135 (2d Cir. 1999). This is precisely

the evaluation performed by the ALJ here.  Accordingly, the Court
finds no error.

Moreover, the ALJ had the opportunity to personally observe
plaintiff and her testimony, something the Court cannot do.
Accordingly, the Court finds no error in the ALJ's assessment of
plaintiff's credibility.

**D.    The ALJ's RFC Determination.**

Plaintiff next argues that the ALJ failed to properly
determine her RFC. The ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) and can sit, stand, and walk for 6 hours
> in an 8 hour day. She can lift and carry 25 pounds
> occasionally and 10 pounds frequently. She is able to
> understand, remember, and carry out instructions; she
> would do better at working [on] her own or in small
> groups; she should avoid working with the public. She
> can  maintain attention and focus to complete simple
> tasks; however, she could occasionally have difficulties
> maintaining focus for complex tasks.

[Tr. 22].

Plaintiff first claims that "it is unclear what the ALJ
relied on to get the RFC description[.]" [Doc. #25-1 at 21]. The
Court construes this as an argument that the ALJ's RFC is not
supported by substantial evidence.

The regulations define light work as follows:

> Light Work. Light work involves lifting no more than 20
> pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds. Even though the weight
> lifted may be very little, a job is in this category
> when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some

> pushing and pulling of arm or leg controls. To be
> considered capable of performing a full or wide range of
> light work, you must have the ability to do substantially
> all of these activities. If someone can do light work,
> we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as
> loss of fine dexterity or inability to sit for long
> periods of time.

20 C.F.R. §§404.1567(b), 416.967(b). Despite plaintiff's

arguments to the contrary, the ALJ's RFC determination is

supported by substantial evidence of record. Specifically, the

ALJ conducted a detailed review of the relevant evidence of

record, including plaintiff's testimony, treatment notes from

plaintiff's medical providers, and the medical opinions of

record. [22-26]. As noted by the ALJ, there are considerable

gaps in treatment for alleged physical impairments. [Tr. 24].

Despite seeking treatment for leg pain in July 2006, she did not

return for treatment until July 2007.[6] [Tr. 24; 531-33].

Plaintiff sought sporadic treatment for complaints of back

and/or neck pain at SCHC on August 18, 2008; June 16, 2009; July

7, 2009; and January 25, 2010, and sought chiropractic treatment

five times between December 2003 and September 2007. [Tr. 24;

471-74; 510-11]. Moreover, treatment records do not establish

that she was physically unable to work. In July 2009, plaintiff

could ambulate without difficulty. [Tr. 24; 473]. In 2010,

---

[6] Plaintiff sought treatment on April 2, 2007, for a cold. [Tr.
532].

plaintiff reported she was working 5 hours a day 6 days a week. [Tr. 482]. In March 2011, plaintiff exhibited no pain to palpation of the cervical and lumbar spine, and had full range of motion with only "some discomfort" and no neuropathic pain. [Tr. 24; 513]. In 2012, treatment records from Family Care Visiting Nurse consistently noted that plaintiff's physical assessment was within normal limits, she was independently mobile, with fair endurance and denied pain.[7]

---

[7] See Tr. 877 (7/9/12); Tr. 875 (7/10/12); Tr. 873 (7/11/12); Tr. 871 (7/12/12); Tr. 869 (7/13/12);  Tr. 867 (7/16/12); Tr. 854 (7/26/12); Tr. 852 (7/27/12); Tr. 850 (7/31/12); Tr. 847 (8/1/12); Tr. 845 (8/2/12); Tr. 843 (8/3/12); Tr. 841 (8/6/12); Tr. 839 (8/7/12); Tr. 835 (8/9/12); Tr. 831 (8/13/12); Tr. 827 (8/15/12); Tr. 825 (8/16/12); Tr. 823 (8/17/12); Tr. 828 (8/18/12); Tr. 819 (8/21/12);  Tr. 817 (8/22/12); Tr. 815 (8/23/12); Tr. 813 (8/24/12); Tr. 811 (8/27/12); Tr. 809 (8/28/12); Tr. 807 (8/29/12); Tr. 804 (8/30/12); Tr. 802 (8/31/12); Tr. 799 (9/4/12); Tr. 797 (9/5/12); Tr. 795 (9/6/12); Tr. 793 (9/7/12); Tr. 791 (9/10/12); Tr. 789 (9/11/12); Tr. 787 (9/12/12); Tr. 785 (9/13/12); Tr. 783 (9/14/12); Tr. 780 (9/18/12); Tr. 777 (9/20/12); Tr. 775 (9/21/12); Tr. 773 (9/22/12); Tr. 771 (9/24/12); Tr. 769 (9/25/12); Tr. 767 (9/26/12); Tr. 765 (9/27/12); Tr. 763 (9/28/12); Tr. 761 (10/1/12); Tr. 759 (10/2/12); Tr. 757 (10/3/12); Tr. 755 (10/4/12); Tr. 753 (10/5/12); Tr. 735 (10/9/12); Tr. 749 (10/10/12); Tr. 743 (10/16/12); Tr. 741 (10/17/12); Tr. 791 (10/18/12); Tr. 737 (10/19/12); Tr. 733 (10/22/12);  Tr. 731 (10/23/12); Tr. 729 (10/24/12); Tr. 727 (10/25/12); Tr. 725 (10/26/12); Tr. 723 (10/30/12); Tr. 721 (10/31/12); 719 (11/1/12); Tr. 717 (11/2/12).

On June 29, 2012, and July 2, 4, 17 and 19, 2012, plaintiff reported back pain on a scale of 2 out of 10. [Tr. 861; 865; 883; 887; 889]. On July 3, 2012, plaintiff reported back pain on a scale of 3 out of 10. [Tr. 885]. On July 6, 18 and 20 and October 8, 2012, plaintiff reported back pain on a scale of 4 out of 10. [Tr. 751; 859; 863; 879]. On August 9, 2012, plaintiff reported back pain at a level 5 on a scale of 10. [Tr.

31

As previously discussed, the ALJ permissibly placed "significant weight" on the opinion of consultative examiner Dr. Murphy. Moreover, the ALJ also considered the State Agency opinions and found that plaintiff's limitation were "more commensurate with light work, rather than a medium exertional capacity" assessed in their opinions. [Tr. 25-26]. Other substantial evidence of record, recited in the Court's discussion above, also supports the ALJ's findings.

Finally, plaintiff argues that the ALJ failed to address pain to her back, neck, arm, wrist, hip, leg or foot and the limitations caused by these conditions. [Doc. #25-1 at 21-21]. The Court finds this argument without merit. As previously stated, the ALJ's decision reflects that she did in fact consider plaintiff's allegations of pain, their consistency or inconsistency with the objective medical evidence, and how such complaints of pain generally did not result in functional limitations. See, e.g., Tr. 23 (noting plaintiff's 2006 back MRI showed improvement since June 2005); Tr. 23 (noting normal pelvic x-ray);  Tr. 23-24 (noting normal x-rays to hand and

---

833]. On October 15, 2012, the nurse noted that plaintiff reported pain to her back/hips at a level 8 on a scale of 10. [Tr. 745]. On August 31, 2011, October 24, 2011, May 8, 2012 and June 28, 2012 and October 12, 2012, plaintiff complained of back pain at a level 9 on a scale of 10. [Tr. 619; 621-22; 747; 893]. She was taking Flexeril and reported moderate pain relief. [Tr. 745-51; 833; 859; 861; 865; 879; 883; 885; 887; 889; 895].

wrist); Tr. 24 (noting gaps in treatment for leg/calf pain); Tr. 24 (summarizing treatment for back pain). She further conducted an extensive credibility analysis and permissibly found plaintiff's claims of pain not credible. See Tr. 23-26.

Plaintiff has otherwise failed to demonstrate how her alleged back, neck, arm, wrist, hip, leg or foot pain affect the ALJ's RFC finding. Accordingly, the Court finds no error.

### E.   There is Substantial Evidence Supporting the ALJ's Step Five Determination.

Plaintiff next contends that the ALJ erred at Step Five of the sequential evaluation because he failed to present credible evidence of jobs which plaintiff could perform with her "actual" RFC. [Doc. #25-1 at 23-25]. Substantial evidence supports the ALJ's determination that the plaintiff is able to perform a significant number of jobs in the national economy. As discussed, the ALJ properly weighed the medical evidence at issue, and his RFC and credibility findings are supported by substantial evidence of record. As to whether there are jobs that the plaintiff can perform, the VE testified that given the RFC determined by the ALJ, the plaintiff would be able to perform occupations such as laundry sorter, electronics swapper and price marker. [Tr. 25, 104-05]. As the testimony of the VE is consistent with the findings of the ALJ and the evidence in the record, there is substantial evidence supporting the ALJ's

determination that the plaintiff can perform a significant number of jobs that exist in the national economy. Accordingly, this argument is without merit. See, e.g., Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (citations omitted) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical so long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved.").

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. Whether there is substantial evidence supporting the plaintiff's view is not the question here.

Finally, plaintiff makes a claim of error that the ALJ and VE mistakenly employed the incorrect DOT Code Number when describing the job of laundry sorter. [Doc. #25-1 at 23-24]. However, the VE cited to two additional jobs, electronics swapper and price marker, and their correct DOT codes. [Tr. 104-05]. Even if there were an error in relation to the laundry sorter job, plaintiff has not challenged the reliability of the VE's testimony as to the existence of jobs in significant numbers in Connecticut for electronics swapper and price marker. "[E]ven one available job may meet the commissioner's burden at Step 5. Thus, elimination of one job would not constitute

harmful error." Hatt v. Soc. Sec. Admin. Comm'r, No. 1:13-cv-00335-NT, 2014 WL 4411600, at *4, n.2 (D. Me. Sept. 5, 2014) (citation omitted); see also Brown v. Astrue, 852 F. Supp. 2d 543, 557 (D. Del. 2012) ("In order to meet the burden of production at step five of the sequential analysis, the Commissioner needs to identify at least one occupation that exists in significant numbers in the national economy that a claimant can perform.") (citation omitted); Rios v. Astrue, 848 F. Supp. 2d 1283, 1290 (D. Colo. 2012) (holding that any error in one of three jobs identified by VE as available to plaintiff was harmless if no error shown as to other two).

Accordingly, the Court finds no error in the ALJ's reliance on the vocational expert's testimony in support of her determination at step five.

## VI.   CONCLUSION

For the reasons stated, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #25]** is **DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #31]** is **GRANTED**.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [doc. #26] on November 16, 2015, with appeal to the Court of Appeals.  Fed. R.

Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport this 28th day of March 2017.

_____/s/_____

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE